LINDBERGH PORTER, Bar No. 100091
lporter@littler.com
MARY D. WALSH, Bar No. 197039
mdwalsh@littler.com
LISA K. HORGAN, Bar No. 267632
lhorgan@littler.com
LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, California 94108.2693
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys for Defendant
ESA MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELAMA WIT EMBAYE, MARK CORREA, THOMAS MITCHELL, SANDRA PEREIRA, YOLANDA SHIHEIBER, and ENREE SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>ESA MANAGEMENT, LLC (DBA "EXTENDED STAY AMERICA" and "EXTENDED STAY HOTELS"), and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT ESA MANAGEMENT, LLC**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446]**<br><br>Alameda County Superior Court<br>Case No. RG14733265<br>Complaint Filed: July 17, 2104 |

TO THE CLERK AND HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant ESA MANAGEMENT, LLC (hereinafter "ESA" or "Defendant"), hereby notice the removal of the above-captioned suit from the Alameda County Superior Court to the United States District Court for the Northern District of California, San Francisco Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

This removal is based on diversity jurisdiction. As required by 28 U.S.C. § 1446(d), Defendant is filing in the Superior Court of the State of California, County of Alameda, and serving upon Plaintiffs and their counsel of record, a Notice To State Court and Adverse Party of Removal of Civil Action To Federal Court (with these removal papers attached). A true and correct copy of said Notice without its attachments is attached hereto as Exhibit A.

In support of this Notice of Removal, Defendant states the following:

## I. STATE COURT PROCEEDINGS

1. On or about July 17, 2014, Plaintiffs SELAMA WIT EMBAYE ("Embaye"), MARK CORREA ("Correa"), THOMAS MITCHELL ("Mitchell"), SANDRA PEREIRA ("Pereira"), YOLANDA SHIHEIBER ("Shiheiber"), and ENREE SMITH ("Smith") (collectively "Plaintiffs") filed a Complaint in the Superior Court of California, County of Alameda which is captioned as follows: *Selama Wit Embaye, Mark Correa, Thomas Mitchell, Sandra Pereira, Yolanda Shiheiber, and Enree Smith vs. ESA Management, LLC (dba "Extended Stay America" And "Extended Stay Hotels"), And DOES 1 to 10 inclusive*, Case No. RG14733265. A true and correct copy of the Complaint is attached hereto as Exhibit B (hereinafter "Complaint") and incorporated herein by reference.

2. Plaintiffs' Complaint alleges four causes of action for: (1) Failure to Pay Overtime; (2) Failure to Provide Meal Periods; (3) Failure to Furnish Accurate Wage Statements, and (4) Unfair Competition. Plaintiff's Complaint seeks the following relief: (1) a declaratory judgment that Defendant has knowingly, intentionally, and willfully violated multiple sections of the California Labor Code as well as IWC Wage Order No. 5 and sections 17200-17208 of the California Business and Professions Code, (2) equitable accounting, (3) unpaid overtime and missed

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

meal period compensation, (4) statutory penalties under Labor Code section 226, (5) restitution pursuant to Business and Professions Code section 17203, and (6) reasonable attorneys' fees and costs. (Complaint, ¶ 78.)

3. On July 17, 2014, Defendant accepted service of a copy of the State Court Complaint and Summons. A true and correct copy of the Proof of Service of Summons is attached hereto as Exhibit C.

4. On July 25, 2014, Defendant was served with a Notice of Initial Case Management Conference and Order. A true and correct copy of the Notice of Initial Case Management Conference and Order and Proof of Service is attached hereto as Exhibit D.

5. Defendant filed a timely Answer to the Complaint on August 14, 2014. A true and correct copy of Defendant's Answer is attached hereto as Exhibit E.

6. To the best of Defendant's knowledge, no further proceedings have been filed in the State Court Action, and the papers described above constitute all process, pleadings and orders served in the State Court Action.

## II. TIMELINESS OF REMOVAL

7. The instant Notice of Removal of Civil Action has been timely filed because it is made within thirty (30) days after the receipt by Defendant of a copy of the initial pleading which sets forth the removable claim. (*See* 28 U.S.C. § 1446(b).)

## III. JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), and this action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil action wherein the amount in controversy for the named Plaintiffs exceeds $75,000, exclusive of interest and costs, and it is between citizens of different states. Here, complete diversity jurisdiction exists because Plaintiffs are citizens of the State of California, and Defendant is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

TLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

9. This is a suit of a wholly civil nature brought in a California court. The action is now pending in Alameda County, California. Venue properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a), 1391 and 1441.

10. All civil actions that arise in the county of Alameda shall be assigned to the San Francisco Division or the Oakland Division. Northern District Local Rule 3-2(c)(d), 3-5(b). Thus, assignment to the San Francisco or Oakland Division is proper.

## IV. DIVERSITY OF CITIZENSHIP

11. As set forth below, this Court has subject matter jurisdiction under diversity jurisdiction, 28 U.S.C. § 1332, and removal is authorized under 28 U.S.C. § 1441(b). This action is between citizens of different states involving matters in controversy exceeding the sum of $75,000, exclusive of interest and costs. (*See* 28 U.S.C. § 1332(a).)

### A. Plaintiffs Are Citizens of California

12. Pursuant to the Complaint, at all relevant times Plaintiffs are, and were, residents of the State of California. (Complaint, ¶¶ 14-19.) Plaintiffs' employment records also indicate that they resided in California, further evidencing their domicile and intent to stay in California. (Declaration of Christopher Rice in Support of Defendant's Notice of Removal of Civil Action ["Rice Decl."], ¶ 3.) For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. (*Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).) A person's domicile is the place he resides with the intention to remain, or to which he intends to return. (*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).) Plaintiffs reside in the State of California with the intent to remain there, and are therefore citizens of California for purposes of the instant jurisdictional analysis. (*See id.*; *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).)

### B. The Defendant is Not A Citizen of California

13. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. (28 U.S.C. §



TLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

1332(c)(1).) In *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010), the United States Supreme Court clarified the test that is to be applied to determine a corporations' principal place of business. The Court concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." In practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings." (*Id.*)

14. Defendant is incorporated in the State of Delaware, as Plaintiffs allege in the Complaint. (*See* Complaint, ¶ 20; Rice Decl., ¶ 2.) Defendant's corporate and executive offices are located in Charlotte, North Carolina. (Rice Decl., ¶ 2.) Defendant's senior executives, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer are based in Charlotte. (*Id.*)

15. As a result, Defendant's principal place of business is in Charlotte, North Carolina. (*See also Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 497 (9th Cir. 2001) (state where most of corporation's physical operations are located typically is considered its principal place of business)).

16. Does 1 through 10, inclusive, are wholly fictitious. Plaintiffs' Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. The citizenship of these doe defendants is to be disregarded for the purposes of determining diversity jurisdiction, and therefore cannot destroy the diversity of citizenship between the parties in this action. (28 U.S.C. Section 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 91 (9th Cir. 1998).)

17. Accordingly, Plaintiffs are citizens of California, Defendant is incorporated and has its principal place of business outside California, and the minimum diversity requirement of 28 U.S.C. § 1332(a) is satisfied.

ITLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

## V. AMOUNT IN CONTROVERSY

18. Plaintiffs' Complaint is silent as to the total amount of damages claimed. The failure of the Complaint to specify the total amount of damages sought by Plaintiffs does not deprive this Court of jurisdiction. (*See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding the failure of Plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining ... to place a specific dollar claim upon its claim.")) Defendant needs only to establish by a preponderance of evidence that Plaintiffs' claims exceed the jurisdictional minimum. (*Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto. Ins. Co*., 116 F.3d 373, 376 (9th Cir. 1997) (same)).

19. Where grounds for removal do not appear on the face of the initial pleading, a defendant can look to "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Lovern v. General Motors Corp*. 121 F. 3d 160, 161 (4th Cir. 1997) (courts may look to "documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal.").

20. Defendant can establish the amount in controversy by relying upon the allegations in the Complaint, and also by setting forth facts in the Notice of Removal that demonstrate that the amount in controversy exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Insurance Company,* 95 F.3d 856, 862 (9th Cir. 1996), *amended* 102 F.3d 398, 404 (9th Cir. 1996); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005) ("[T]he amount in controversy . . . may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant.").

21. Plaintiffs alleged damages include unspecified amounts for unpaid overtime wages; missed meal periods (or compensation therefor); statutory penalties for incorrectly itemized pay statements (or a larger amount in alleged damages); and attorneys' fees, expenses, and costs. (Complaint, ¶¶ 47-78). Each of Plaintiffs' claims is based on the assertion that they were misclassified as exempt employees. (Complaint, *passim.*)

TLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

22. California Code of Civil Procedure section 338(a) provides that the statute of limitations for actions to recover wages is three (3) years. However, Plaintiffs' Complaint asserts that Defendant's alleged Labor Code violations predicate a claim under California Business and Professions Code sections 17200, et seq. (the "UCL"). A four-year statute of limitations applies to UCL claims, including recovery of wages and related damages. (Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 177-179 (2000) (holding actions for unpaid wages pursuant to the UCL are subject to a four-year statute of limitations).)

23. Defendant denies the validity and merit of all of Plaintiffs' claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiffs are entitled to any damages or penalties, and assuming, *arguendo*, the truth of Plaintiffs' allegations, it is readily apparent that the amount "in controversy" as alleged by each of the Plaintiffs is in excess of the jurisdictional minimum of $75,000, as required by 28 U.S.C. § 1332.[1]

**A. Each Plaintiff's Settlement Demand Was Far In Excess of the Jurisdictional Minimum.**

24. In this case, Plaintiffs sent Defendant a Damages Exposure Analysis showing each Plaintiff's individual assertion of damages far exceeds $75,000.00. (Declaration of Lindbergh Porter, Jr. In Support of Notice of Removal ["Porter Decl."] ¶ 3). Plaintiffs' sent this Damages Exposure Analysis in the context of initiating settlement discussions.

25. Plaintiffs' assertion of damages in their Damages Exposure Analysis is sufficient to establish that the amount in controversy exceeds the jurisdictional minimum. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974-75 (9th Cir. 2007) *citing to Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"). Although not characterized as a

[1] Alternatively, in a multi-plaintiff action, if there is complete diversity and one plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by other plaintiffs in lesser amounts provided that all claims arise out of the same Article III case or controversy. . (28 U.S.C. § 1367(a); *see Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549, 566-67 (2005), superseded by statute on other grounds (holding that the "threshold requirement of section 1367(a) is satisfied in cases . . . where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy.")

"demand letter," Plaintiffs' Damages Exposure Analysis does show Plaintiffs' assertion of their damages. *Wilson v. Belin*, 20 F.3d 644, 651 fn. 8 (5th Cir. 1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeded $50,000 [under the prior $50,000 jurisdictional limit], it is 'apparent' that removal was proper."); *Del Real v. Healthsouth Corp.*, 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001) ("("[A]s to whether a demand letter is admissible as evidence, many courts have ruled that even if the initial pleading in a case does not support the amount in controversy requirement for diversity jurisdiction, defendants may use a variety of documents, including a written settlement demand, as 'other paper,' to determine if the case is removable"); *see also Molina v. Lexmark Intl., Inc.*, 2008 U.S. Dist. LEXIS 83014; 77 Fed. R. Evid. Serv. 905 (C.D. Cal. 2008) (statements made during settlement discussions to establish the amount in controversy do not undermine the policy goals of the duty of confidentiality under Rule 408).

26. A written settlement demand can constitute "other paper" within the meaning of 28 U.S.C. § 1446(b) if it appears to reflect a reasonable estimate of the plaintiff's claim. *See Cohn v. Petsmart, Inc.* 281 F.3d 837, 840 (9th Cir. 2002) (court noted that the settlement demand letter was sufficient to establish the amount in controversy); *see also Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997) (plaintiff's settlement offer is properly consulted in determining "plaintiff's assessment of the value of her case"); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) (while a "settlement offer, by itself, may not be de-terminative, it counts for something").

27. Accordingly, the Damages Exposure Analysis sufficiently establishes the amount in controversy for purposes of removal.

**B. The Amount in Controversy for Each of the Plaintiffs Exceeds the Jurisdictional Minimum Regardless of Plaintiffs' Damages Exposure Analysis.**

28. Even aside from Plaintiffs' assertion in their Damages Exposure Analysis, it is apparent that Plaintiffs' amount in controversy meets the jurisdictional minimum.

TTLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

**1. Background Information for Calculations**

29. ESA's records reflect that the Plaintiffs worked in exempt managerial positions in California during the following time periods:

a. Embaye: 9/4/2007-12/11/2013

b. Correa: 6/12/2007-present

c. Mitchell: 3/3/2008-12/28/2013

d. Pereira: 4/12/2010-10/1/2013

e. Shiheiber: 2/1/2006-9/21/2012

f. Smith: 1/3/2011-7/23/2013

30. To determine the monetary amount at issue for Plaintiffs' claims, it is necessary to estimate Plaintiffs' average hourly rate. Because Plaintiffs were properly paid on a salary basis, their salary must first be converted to an hourly rate. Defendant has calculated approximate hourly rates below for the period between February 5, 2010[2] and the end of Plaintiffs' employment,[3] for the purposes of removal only, based on dividing the plaintiff's salary for the listed period by 2080 hours (or 40 hours for 52 weeks per year). (*See* Rice Decl., ¶ 5).

**a. Embaye**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 7/20/2013 | 12/11/2013 | 16 | $ 46,003 | $ 22.12 |
| 5/11/2013 | 7/19/2013 | 10 | $ 45,775 | $ 22.01 |
| 11/8/2012 | 5/10/2013 | 26 | $ 40,775 | $ 19.60 |
| 11/12/2011 | 11/7/2012 | 52 | $ 39,975 | $ 19.22 |
| 2/5/2010 | 11/11/2011 | 92 | $ 39,000 | $ 18.75 |

**b. Correa**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 7/20/2013 | 5/10/2014 | 40 | $ 59,885 | $ 28.79 |
| 3/2/2013 | 7/19/2013 | 15 | $ 59,000 | $ 28.37 |
| 9/15/2012 | 3/1/2013 | 24 | $ 56,000 | $ 26.92 |

[2] As set forth above, the applicable statute of limitations for Plaintiffs' claims for unpaid wages is four years, due to Plaintiffs' UCL claim. Additionally, Plaintiffs' claims against Defendant were subject to an agreement to toll the statute of limitations between February 5, 2014 and July 17, 2014, thus lengthening the four year period by that amount of time. (Complaint, ¶¶6-8.)

[3] Weeks worked were reduced by any time off on an approved leave of absence.

| | | | | |
|---|---|---|---|---|
| 5/12/2012 | 9/14/2012 | 18 | $ 49,200 | $ 23.65 |
| 5/9/2011 | 5/11/2012 | 53 | $ 48,000 | $ 23.08 |
| 5/22/2010 | 5/8/2011 | 50 | $ 40,000 | $ 19.23 |
| 2/5/2010 | 5/21/2010 | 15 | $ 36,000 | $ 17.31 |

**c. Mitchell**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 8/17/2013 | 10/28/2013 | 10 | $ 56,000 | $ 26.92 |
| 7/20/2013 | 8/16/2013 | 4 | $ 53,481 | $ 25.71 |
| 3/2/2013 | 7/19/2013 | 20 | $ 52,951 | $ 25.46 |
| 5/26/2012 | 3/1/2013 | 40 | $ 58,835 | $ 28.29 |
| 5/28/2011 | 5/25/2012 | 52 | $ 57,400 | $ 27.60 |
| 6/3/2010 | 5/27/2011 | 51 | $ 56,000 | $ 26.92 |
| 2/5/2010 | 6/2/2010 | 17 | $ 48,000 | $ 23.08 |

**d. Pereira**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 7/7/2012 | 9/14/2012 | 10 | $ 40,974 | $ 19.70 |
| 7/14/2011 | 7/6/2012 | 49 | $ 39,975 | $ 19.22 |
| 4/2/2011 | 7/13/2011 | 15 | $ 35,700 | $ 17.16 |
| 4/12/2010 | 4/1/2011 | 51 | $ 35,000 | $ 16.83 |

**e. Shiheiber**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 9/17/2011 | 9/21/2012 | 36 | $ 56,410 | $ 27.12 |
| 2/5/2010 | 9/16/2011 | 60 | $ 55,000 | $ 26.44 |

**f. Smith**

| Period Start | Period End | Weeks Worked | Salary | Hourly Rate |
|---|---|---|---|---|
| 9/1/2012 | 7/23/2013 | 46 | $ 58,425 | $ 28.09 |
| 8/31/2011 | 8/31/2012 | 52 | $ 57,000 | $ 27.40 |
| 1/3/2011 | 8/30/2011 | 34 | $ 52,000 | $ 25.00 |

### C. Overtime Claims

31. Plaintiffs' unpaid overtime claim is based upon the assertion that Plaintiffs "regularly" worked in excess of eight hours per workday and over 40 hours in a week. (Complaint, ¶ 49). *Webster's New World Dictionary*, Third College Edition (1988), defines "regularly" to mean

"usual; customary . . . . habitual in action . . . characterized by conformity to a fixed principle or procedure." Further, Plaintiffs contend that "the typical on-site workday . . . rang[ed] from approximately nine to twelve hours per day." (Complaint, ¶ 44.)

32. For purposes of removal only, Defendant assumes that Plaintiffs worked three hours of overtime per day, five days a week, for each week he or she was employed between February 5, 2010 and present. (*See* Complaint ¶44)

33. Applying the overtime rate, or one and one-half times Plaintiffs' average hourly rate, to the total number of overtime hours applicable to each Plaintiff in question, yields the following amount in controversy for each Plaintiffs' unpaid overtime claim:

**a. Embaye:**

| Period Start | Period End | Weeks | Hourly Rate | Overtime Rate | Overtime Hours Per Week | Overtime Pay |
|---|---|---|---|---|---|---|
| 7/20/2013 | 12/11/2013 | 16 | $22.12 | $33.18 | 15 | $ 7,963.20 |
| 5/11/2013 | 7/19/2013 | 10 | $22.01 | $33.01 | 15 | $ 4,951.50 |
| 11/8/2012 | 5/10/2013 | 26 | $19.60 | $29.41 | 15 | $ 11,469.90 |
| 11/12/2011 | 11/7/2012 | 52 | $19.22 | $28.83 | 15 | $ 22,487.40 |
| 2/5/2010 | 11/11/2011 | 92 | $18.75 | $28.13 | 15 | $ 38,819.40 |
| | | | | | **Total** | **$ 85,691.40** |

**b. Correa:**

| Period Start | Period End | Weeks | Hourly Rate | Overtime Rate | Overtime Hours Per Week | Overtime Pay |
|---|---|---|---|---|---|---|
| 7/20/2013 | 5/10/2014 | 40 | $28.79 | $43.19 | 15 | $ 25,914.00 |
| 3/2/2013 | 7/19/2013 | 15 | $28.37 | $42.55 | 15 | $ 9,573.75 |
| 9/15/2012 | 3/1/2013 | 24 | $26.92 | $40.38 | 15 | $ 14,536.80 |
| 5/12/2012 | 9/14/2012 | 18 | $23.65 | $35.48 | 15 | $ 9,579.60 |
| 5/9/2011 | 5/11/2012 | 53 | $23.08 | $34.62 | 15 | $ 27,522.90 |
| 5/22/2010 | 5/8/2011 | 50 | $19.23 | $28.85 | 15 | $ 21,637.50 |
| 2/5/2010 | 5/21/2010 | 15 | $17.31 | $25.96 | 15 | $ 5,841.00 |
| | | | | | **Total** | **$ 114,605.55** |

**c. Mitchell**

| Period Start | Period End | Weeks | Hourly Rate | Overtime Rate | Overtime Hours | Overtime Pay |
|---|---|---|---|---|---|---|
| 8/17/2013 | 10/28/2013 | 10 | $26.92 | $40.38 | 15 | $ 6,057.00 |
| 7/20/2013 | 8/16/2013 | 4 | $25.71 | $38.57 | 15 | $ 2,314.20 |

| 3/2/2013 | 7/19/2013 | 20 | $25.46 | $38.19 | 15 | $ 11,457.00 |
|---|---|---|---|---|---|---|
| 5/26/2012 | 3/1/2013 | 40 | $28.29 | $42.43 | 15 | $ 25,458.00 |
| 5/28/2011 | 5/25/2012 | 52 | $27.60 | $41.39 | 15 | $ 32,284.20 |
| 6/3/2010 | 5/27/2011 | 51 | $26.92 | $40.38 | 15 | $ 30,890.70 |
| 2/5/2010 | 6/2/2010 | 17 | $23.08 | $34.62 | 15 | $ 8,828.10 |
| | | | | | **Total** | **$ 117,289.20** |

**d. Pereira**

| **Period Start** | **Period End** | **Weeks** | **Hourly Rate** | **Overtime Rate** | **Overtime Hours** | **Overtime Pay** |
|---|---|---|---|---|---|---|
| 7/7/2012 | 9/14/2012 | 10 | $19.70 | $29.55 | 15 | $ 4,432.50 |
| 7/14/2011 | 7/6/2012 | 49 | $19.22 | $28.83 | 15 | $ 21,190.05 |
| 4/2/2011 | 7/13/2011 | 15 | $17.16 | $25.75 | 15 | $ 5,793.75 |
| 4/12/2010 | 4/1/2011 | 51 | $16.83 | $25.24 | 15 | $ 19,308.60 |
| | | | | | **Total** | **$ 50,724.90** |

**e. Shiheiber:**

| **Period Start** | **Period End** | **Weeks** | **Hourly Rate** | **Overtime Rate** | **Overtime Hours** | **Overtime Pay** |
|---|---|---|---|---|---|---|
| 9/17/2011 | 9/21/2012 | 36 | $27.12 | $40.68 | 15 | $ 21,967.20 |
| 2/5/2010 | 9/16/2011 | 60 | $26.44 | $39.66 | 15 | $ 35,694.00 |
| | | | | | **Total** | **$ 57,661.20** |

**f. Smith:**

| **Period Start** | **Period End** | **Weeks** | **Hourly Rate** | **Overtime Rate** | **Overtime Hours** | **Overtime Pay** |
|---|---|---|---|---|---|---|
| 9/1/2012 | 7/23/2013 | 46 | $28.09 | $42.13 | 15 | $ 29,069.70 |
| 8/31/2011 | 8/31/2012 | 52 | $27.40 | $41.11 | 15 | $ 32,065.80 |
| 1/3/2011 | 8/30/2011 | 34 | $25.00 | $37.50 | 15 | $ 19,125.00 |
| | | | | | **Total** | **$ 80,260.50** |

**D. Missed Meal Periods**

34. In their Complaint, Plaintiffs allege that Defendant "regularly failed to provide a 30 minute off-duty meal period to Plaintiffs when they worked more than five hours a day...[and] regularly failed to provide a second 30 minute off-duty meal period to Plaintiffs when they worked more than 10 hours in a day." (Complaint, ¶ 44, *see also* ¶¶ 54-55.) As set forth above, Plaintiffs also allege that they "typically" worked "nine to twelve hours per day." (Complaint, ¶ 44.)

35. California Labor Code section 226.7 imposes a penalty of one hour of pay for each meal break that the employer does not provide.

ITLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

36. Although Defendant denies the validity of this claim, based on the far-reaching allegations of the Complaint, Defendant assumes (for purposes of removal only) that Plaintiffs are owed five (5) hours of premium pay for five (5) meal period violations per week. The amount at issue for Plaintiffs' meal period claim, without considering whether Plaintiffs even were not provided with a second meal period, is thus:

**a. Embaye:**

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 16 | $ 22.12 | 5 | $ 1,769.60 |
| 10 | $ 22.01 | 5 | $ 1,100.50 |
| 26 | $ 19.60 | 5 | $ 2,548.00 |
| 52 | $ 19.22 | 5 | $ 4,997.20 |
| 92 | $ 18.75 | 5 | $ 8,625.00 |
| | | **Total** | **$ 19,040.30** |

**b. Correa:**

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 40 | $ 28.79 | 5 | $ 5,758.00 |
| 15 | $ 28.37 | 5 | $ 2,127.75 |
| 24 | $ 26.92 | 5 | $ 3,230.40 |
| 18 | $ 23.65 | 5 | $ 2,128.50 |
| 53 | $ 23.08 | 5 | $ 6,116.20 |
| 50 | $ 19.23 | 5 | $ 4,807.50 |
| 15 | $ 17.31 | 5 | $ 1,298.25 |
| | | **Total** | **$ 25,466.60** |

**c. Mitchell:**

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 10 | $ 26.92 | 5 | $ 1,346.00 |
| 4 | $ 25.71 | 5 | $ 514.20 |
| 20 | $ 25.46 | 5 | $ 2,546.00 |
| 40 | $ 28.29 | 5 | $ 5,658.00 |
| 52 | $ 27.60 | 5 | $ 7,176.00 |
| 51 | $ 26.92 | 5 | $ 6,864.60 |
| 17 | $ 23.08 | 5 | $ 1,961.80 |
| | | **Total** | **$ 26,066.60** |

TLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

d. Pereira

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 10 | $ 19.70 | 5 | $ 985.00 |
| 49 | $ 19.22 | 5 | $ 4,708.90 |
| 15 | $ 17.16 | 5 | $ 1,287.00 |
| 51 | $ 16.83 | 5 | $ 4,291.65 |
| | | **Total** | **$ 11,272.55** |

e. Shiheiber

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 36 | $ 27.12 | 5 | $ 4,881.60 |
| 60 | $ 26.44 | 5 | $ 7,932.00 |
| | | **Total** | **$ 12,813.60** |

f. Smith:

| Weeks | Hourly Rate | Meal Periods/Week | Meal Penalty |
|---|---|---|---|
| 46 | $ 28.09 | 5 | $ 6,460.70 |
| 52 | $ 27.40 | 5 | $ 7,124.00 |
| 34 | $ 25.00 | 5 | $ 4,250.00 |
| | | **Total** | **$ 17,834.70** |

**E. Failure to Provide Accurate Wage Statements**

37. Plaintiffs allege Defendant failed to provide accurate wage statements to them and are subject to civil penalties as a result. (Complaint, ¶¶ 58-62.) Labor Code section 226(c) provides for penalties in the amount of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." Plaintiffs' Wage Statement Claim is limited by the statute of limitations to the one year prior to the filing of the Complaint (plus the time tolled as discussed above), *i.e.* February 5, 2013. (*See Singer v. Becton, Dickinson & Co., Med-Safe Sys.*, 2008 U.S. Dist. LEXIS 56326, *11-14 (S.D. Cal. July 23, 2008).)

38. Plaintiffs are paid on a biweekly basis. (Rice, ¶ 6.) Accordingly, the approximate amount at issue for Plaintiff's Wage Statement Claim is as follows:

a. Embaye: **$2150.00** (22 total pay periods:[4] [1 pay period * $50.00] + [21 pay periods * $100.00])

b. Correa: **$3950.00** (40 total pay periods: [1 pay period * $50.00] + [39 pay periods * $100.00])

c. Mitchell: **$1850.00** (19 total pay periods: [1 pay period * $50.00] + [18 pay periods * $100.00])

d. Pereira: Outside the statute of limitations.

e. Shiheiber: Outside the statute of limitations.

f. Smith: **$1150.00** (12 total pay periods: [1 pay period * $50.00] + [11 pay periods * $100.00])

**F. Attorneys' Fees**

39. Plaintiffs also seek to recover attorneys' fees pursuant to California Labor Code sections 1194 and 226, as well as any other applicable law. (Complaint, ¶ 78). It is well settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages as well as attorneys' fees. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 157 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees may be taken into account to determine jurisdictional amounts). Assuming an attorney's fee award of 30% of the aforementioned amounts in controversy, the amount of attorneys' fees recovered by Plaintiffs, should they prevail, is likely to be as follows:

| Plaintiff | Total Pre-Fees | Attorneys' Fees |
|---|---|---|
| Embaye | $106,881.70 | $32,064.51 |
| Correa | $144,022.15 | $43,206.65 |
| Mitchell | $145,205.80 | $43,561.74 |
| Pereira | $61,997.45 | $18,599.24 |

[4] The number of pay periods is based on the number of weeks each Plaintiff was employed between February 5, 2013, and present, divided by two (because Plaintiffs are paid on a biweekly basis).

TLER MENDELSON, P.C.
650 California Street
20th Floor
Francisco, CA 94108.2693
415.433.1940

| | | |
|---|---|---|
| Shiheiber | $70,474.80 | $21,142.44 |
| Smith | $99,245.20 | $29,773.56 |

**G. Total Amount in Controversy**

40. Therefore, the total amount in controversy for each Plaintiff on their overtime, meal period, and wage statement claims are as follows:

| Plaintiff | Total Amount in Controversy |
|---|---|
| Embaye | **$138,946.21** |
| Correa | **$187,228.80** |
| Mitchell | **$188,767.54** |
| Pereira | **$80,596.69** |
| Shiheiber | **$91,617.24** |
| Smith | **$129,018.76** |

Based on the foregoing, each Plaintiffs' individual claims for damages, penalties, and other monetary relief exceed the $75,000 jurisdictional limit of this Court required by the diversity statute, 28 U.S.C. § 1332(a). Additionally, as set forth above, this is a civil action between citizens of different states. Consequently, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a) and one that is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b), Defendants remove this case from the Alameda County Superior Court to the United States District Court, Northern District of California.

Dated: August 18, 2014

Respectfully submitted,

*/s/Mary D. Walsh*
LINDBERGH PORTER
MARY D. WALSH
LISA K. HORGAN
LITTLER MENDELSON, P.C.
Attorneys for Defendant
ESA MANAGEMENT, LLC

Firmwide:128175203.6 052026.1072